UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMEY GOINS,
    Plaintiff,

v.

BRIDGEPORT HOSPITAL, MARYLYN COSCIA,
    Defendants.

No. 3:11cv560 (SRU)

## MEMORANDUM OF DECISION

Plaintiff Amey Goins alleges that her former employer, Defendant Bridgeport Hospital (the "Hospital"), created a hostile work environment, treated her disparately, wrongfully terminated her, and unlawfully retaliated against her in violation of Title VII, 42 U.S.C. § 2000e *et seq*. She further alleges that her former supervisor, Defendant Marylyn Coscia, created a hostile work environment and discriminated against her in violation of 42 U.S.C. § 1981.

Currently pending are two motions for summary judgment: one brought by Bridgeport Hospital [doc. # 74] and the other brought by Marylyn Coscia [doc. # 75]. For the reasons that follow, the motions for summary judgment are granted.

### I.    Background[1]

Amey Goins, an African-American registered nurse began working at the Hospital in 2005. Her supervisor from 2005 until 2009 was Marylyn Coscia and from 2009 until Goins' termination in March 2010 was Candace Maffei. Both Coscia and Maffei are Caucasian. Goins alleges that the Hospital created a hostile work environment, treated her disparately, wrongfully terminated her employment and unlawfully retaliated against her in violation of Title VII, 42

---

[1] Unless otherwise noted, the facts are taken from Defendants' Local Rule 56(a)(1) Statements [docs. # 74-10, 75-6], Defendants' Mots. for Summ. J. [docs. # 74, 75], Goins' Local Rule 56(a)(2) Statement [doc. # 82-2] and Goins' Opp'n to Summ. J. [doc. # 82].

U.S.C. § 2000e *et seq*. She further alleges that two of her supervisors, Coscia and Maffei, created a hostile work environment and treated her disparately in violation of 42 U.S.C. § 1981, and that all three defendants intentionally inflicted emotional distress upon her in violation of Connecticut state law. In October 2011, District Judge Mark R. Kravtiz dismissed the suit against Maffei and dismissed the count of intentional infliction of emotional distress against all Defendants. *See* Ruling and Order [doc. # 49].

Goins claims that during her employment she was subjected to a variety of hostile and discriminatory behavior by Coscia and others. Goins claims that during her tenure at the Hospital, Coscia refused to post positive notes about Goins on the bulletin board by the nurses' lounge, but posted positive comments about other nurses on the same bulletin board.  In July 2005, Coscia grabbed her hand stiffly and said that she was "sick and tired of [the Hospital's Chairman of Psychiatry] telling her that Goins was a good nurse." Pl.'s Local Rule 56(a)(2) Statement [doc. # 82-2] at 8-9. Beginning in 2006, Goins was consistently denied shift change requests. Although Goins signed a work/payroll schedule agreement with the Hospital, which established an evenings/night shift schedule, Goins asked to be assigned to day shifts. Coscia repeatedly denied Goins' shift-change requests while allowing white nurses to switch, despite the fact that Goins had more seniority. Ultimately, Coscia's denials were reversed by Anna Aquillo, Director of the Unit.

In January 2009, Peter Kokkoros, a white nurse, told Goins that a patient had an order from a physician for oxygen. Kokkoros had failed to enter the order into the computer system before the end of his shift. Goins did not check the computer system to verify the oxygen order before administering the oxygen. Goins was issued a disciplinary warning that remained in her personnel file for a period of time. Kokkoros was not issued a written warning. After Goins

found out that Kokkoros did not receive a written warning, Goins filed a complaint with the Commission on Human Rights and Opportunities ("CHRO"). Based on statements from Coscia, the Hospital answered the complaint by stating that Goins and Kokkoros had received equivalent warnings. After the Hospital conducted a more thorough investigation, it discovered that Coscia had backdated a written warning to Kokkoros. Coscia was asked to retire. The Hospital downgraded Goins' discipline from a written warning to a verbal warning. The Hospital, however, considers Goins' omission to be more serious than Kokkoros' because she had administered the treatment without either a direct physician order or confirmation of the order.

Also in January 2009, while Goins was sitting at a conference table giving a report, an African-American co-worker, Pat Allen, pushed her way behind Goins. Goins believes that Allen's actions constituted physical aggressiveness and violence. Although Goins' supervisor witnessed the event and other supervisors were apprised of the event, they did not reprimand Allen. Allen continued to berate Goins during her employment, suggesting that she should quit her job and questioning her sexual orientation.

In March 2009, Goins was disciplined for forgetting to check off that she had given a patient medication. She claims that white nurses were not disciplined for the same infraction.

In September 2009, one of Goins' patients fell on the floor. Maffei, who replaced Coscia, questioned Goins twice and issued her a disciplinary warning for not knowing the protocol to follow when a patient falls. Goins claims that white nurses were not repeatedly questioned and then disciplined in similar cases. After this incident, Goins filed a second CHRO complaint.

Also in September 2009, someone anonymously wrote "Fake Bitch" with an arrow pointing to Goins' name on the float log posted in the nurses' lounge. Goins made a copy of the float log and gave it to Maffei. Maffei asked her supervisor if she recognized the handwriting.

Her supervisor did not. Nothing more was done. The float log remained posted in the nurses' lounge.

Back in February 2009, Coscia failed to give Goins her performance review. Goins claims that the delay caused her to forgo a wage increase because in March 2009 the Hospital instituted a wage freeze. However, the Hospital states that the delay in the performance evaluation did not deprive Goins of a pay raise because any raise would apply retroactively. Goins was not the only employee who did not receive a timely review from Coscia. Goins had still not received her review from Coscia when Coscia retired in September 2009. Finally in November 2009, Goins' performance evaluation for the period from February 2008 to February 2009 was completed by Maffei and Matthew McDonough, the department director. Goins received her review from Maffei, which indicated that she was lacking in overall competence, leadership and critical-thinking skills. Goins was placed on a 90-day performance improvement plan and was ineligible for a wage increase. This review was in contrast to her prior positive reviews.

A performance evaluation for the period of November 17, 2009 to February 15, 2010 was prepared by Maffei and given to Goins on March 19, 2010, the date of her termination. Although Goins' second CHRO complaint was dismissed in February 2010, the CHRO subsequently reinstated the complaint after Goins was terminated, and allowed her to file an amended complaint. Goins filed an amended complaint in October 2010. This complaint was also dismissed. A release of jurisdiction letter was issued by the CHRO in March 2011. Goins then commenced this action.

## II.     Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

**III.    Discussion**

Goins brings hostile work environment (Count I), disparate treatment (Count I), wrongful termination (Count III) and retaliation (Count IV) claims against Bridgeport Hospital. Goins also brings hostile work environment and disparate treatment claims (Count II) against Marylyn Coscia, her former supervisor.

*A.    Hostile Work Environment Claims*

To succeed on a hostile work environment claim under either § 1981 or Title VII, "the plaintiff must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule, and insult,' such that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive.' Whether the environment may be considered sufficiently hostile or abusive to support such claim is to be

measured by the totality of circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Williams v. Cnty. of Westchester,* 171 F.3d 98. 100 (2d Cir. 1999) (per curium) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)) (citations omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. . . . Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citations omitted). Nevertheless, "a single act can meet the threshold, if by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* "In short, a plaintiff alleging a hostile work environment must demonstrate either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (internal quotation marks omitted). In addition, the plaintiff must show that such harassment occurred because of her race. *See Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."). But, race-based hostility need not and does not always announce itself as such, and routine workplace actions, when continuously handled in a racially discriminatory way, can combine to create a hostile work environment. *See Jemmott v. Coughlin*, 85 F.3d 61 (2d Cir. 1996) (hostile work environment claim involving shift changes, job assignments, and disciplinary procedures in the workplace).

   Construing Goins' allegations liberally and viewing the totality of circumstances in the light most favorable to her, no reasonable jury could find that her work environment was hostile.

Nothing in the record supports the conclusion that the workplace was "severely permeated" with discriminatory intimidation, ridicule or insult. Although Goins may well have felt ridiculed or intimidated, there is insufficient evidence to support a reasonable conclusion that the occurrences were pervasive and the product of discriminatory intent. The incidents were sparse, often separated by months. And no single act was extraordinarily severe, including the anonymous racially-neutral "fake bitch" written on the nurses' log. *See Stepheny v. Brooklyn Hebrew School for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (co-worker's use of the phrase "white bitch" five times over five months did not create a racially hostile work environment); *Augustin v. Yale Club of New York City*, 2007 WL 2690289, at *21-22 (S.D.N.Y. 2006) (co-worker's use of "black bitch" insufficient to create a hostile work environment given the infrequent and sporadic nature of the remark); *Beale v. Mount Vernon Police Dept.*, 2012 WL 4473282, at *9 ("courts have regularly concluded that the occasional use of [bitch] is not severe enough to create a hostile work environment").

"Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." *Alfano*, 294 F.3d at 377. Coscia and others may have been harsh, unjust and rude to Goins, but that alone does not constitute a hostile workplace environment. Goins' warranted disciplinary actions for workplace violations do not create a hostile work environment. Neither do her disagreements with supervisors. And, other than conjecture, Goins fails to produce evidence to support a claim that the harassment occurred because of her race. *See Parker v. Sony Pictures Entm't*, 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only to point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))). Therefore, Goins' hostile work environment claim fails as a matter of law.

B.     *Disparate Treatment*

When evaluating a claim of employment discrimination under 42 U.S.C. § 1981 and Title VII, we apply the *McDonnell-Douglas* burden-shifting framework. Goins first has an obligation to present evidence sufficient to establish a prima facie case of discrimination. "In the context of alleged discriminatory treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). If plaintiff can establish a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant articulates such a nondiscriminatory reason, the burden shifts back to the plaintiff "to show that [defendant's] stated reason for [the adverse employment action] was in fact pretext." *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Goins cannot survive summary judgment on her disparate treatment claim against Coscia and the Hospital. Although Goins satisfies the first and second prongs of the *McDonnell-Douglas* framework, Goins fails to establish the third prong (adverse employment action) against Coscia, and the fourth prong (discriminatory intent) against Coscia and the Hospital.

First, Goins did not establish a prima facie case for her section 1981 disparate treatment claim against Coscia. Goins did not suffer an adverse employment action while Coscia was an


employee at Bridgeport Hospital. An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citation omitted). Employment actions that have been deemed sufficiently adverse include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities." *Id.* (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Goins alleges she suffered an adverse employment action when she was not assigned her requested shift changes, reprimanded for failing to check off a patient's name after giving medication, reprimanded for not knowing the protocol policy when a patient fell, not given her yearly evaluation in a timely manner and disciplined for the "oxygen incident." But these incidents cannot be considered adverse employment actions. The disciplinary action was not an adverse employment action because the impact of the discipline was not sufficiently adverse. In fact, the written disciplinary warning Goins received for the "oxygen incident" was eventually reduced to a verbal warning by the Hospital. Goins also did not suffer an adverse employment action when Coscia and others denied her the day shifts she requested. Goins was not hired for day shifts; therefore, denial of her requests did not constitute a change in her employment.

Second, even if I assume Goins has demonstrated a prima facie case, defendants have put forth evidence supporting legitimate nondiscriminatory reasons for Goins' disciplinary warnings, poor review and eventual termination: Goins failed to follow hospital protocol on the occasions she was disciplined; Goins had difficulty communicating with co-workers; Goins needs to improve her critical-thinking skills. The burden then shifts back to Goins to show that the "real reason" for her termination was her race. But there is no direct or indirect evidence in the record

that Goins was treated differently because of her race. For many of the incidents Goins describes, Goins alleges that similarly situated white nurses were treated differently. But Goins does not provide much more than a few conclusory statements to support that allegation. And for the one example where she provides sufficient detail, the "oxygen incident," the Hospital, after it investigated the incident, downgraded her discipline from written warning to verbal warning—the same discipline that the white nurse received.

C.      *Wrongful Termination*

Goins' wrongful termination claim fails for the same reason that her employment discrimination claim against the Hospital fails. Wrongful termination claims are also decided using the *McDonnell-Douglas* framework. Even assuming proof of a prima facie case, a reasonable jury would not find that the real reason she was terminated was because of her race.

D.      *Retaliation*

In order to establish a prima facie case of retaliation, Goins must show "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a material adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action, i.e., that a retaliatory motive played a part in the adverse employment action." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). If Goins submits evidence sufficient to demonstrate a prima facie case, then the "burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action. . . . If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." *Id.* at

552-53 (citation and quotation omitted).

Goins has failed to produce evidence from which a reasonable jury could find that Goins' termination was caused by retaliatory animus. Goins argues that a temporal inference can be made given the timing of her second CHRO complaint and her poor review and subsequent termination. Goins filed her complaints in June 2009 and October 2009. She received a negative review in November 2009 and was terminated in March 2010. Although there is a temporal connection, Goins has provided no additional evidence that any of the individuals responsible for her termination harbored any animus towards Goins because she filed the CHRO complaints. Goins has not even put forth evidence that her supervisors knew Goins filed the second complaint.

Even if Goins did meet each element of her prima facie case, the Hospital has produced evidence of a legitimate, non-retaliatory reason for terminating her. The Hospital has shown that she had poor working relationships with her coworkers, that she did not always follow hospital protocol, and that she was given 90 days to improve her performance but failed to do so. Goins has no evidence that the Hospital's decisions are pretextual. Accordingly, Goins' retaliation claim fails as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Hospital's Motion for Summary Judgment [doc. # 74] and Coscia's Motion for Summary Judgment [doc. # 75] are GRANTED. The clerk shall enter judgment and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 25th day of March 2013.

<div style="text-align: right;">
/s/ Stefan R. Underhill  
Stefan R. Underhill  
United States District Judge
</div>